IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 25, 2020 Session

## LARRY E. RATHBONE v. STATE OF TENNESSEE

Appeal from the Criminal Court for Campbell County
No. 16073    E. Shayne Sexton, Judge

_____

### No. E2019-00447-CCA-R3-PC

_____

The State appeals from the post-conviction court's order granting post-conviction relief to the Petitioner, Larry E. Rathbone, from his convictions for two counts of rape of a child, one count of attempted rape of a child, and one count of aggravated sexual battery, for which he is serving an effective fifty-six-year sentence.  On appeal, the State contends that the post-conviction court erred in granting relief on the Petitioner's ineffective assistance of counsel claim related to his trial attorney's dual representation of him and the codefendant at their joint trial and related to counsel's failure to obtain a severance. In cross-appeal issues, the Petitioner contends that the court erred in failing to grant relief on his claim that he received the ineffective assistance of counsel because trial counsel did not challenge the competency of the child victim who testified at the trial and that he is entitled to plain error relief based upon ineffective assistance of counsel due to counsel's lack of objection to the introduction of evidence of uncharged criminal conduct.  We conclude that the post-conviction court erred in granting relief and reverse its judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Wesley D. Stone, Knoxville, Tennessee, for the Appellant, Larry E. Rathbone.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Senior Assistant Attorney General; Jared R. Effler, District Attorney General; Thomas E. Barclay, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner and Veronda Gean Fleeman, who was the Petitioner's girlfriend at the time of the offenses, were convicted by a Campbell County Criminal Court jury of offenses related to the sexual abuse of one of the Petitioner's sons. The victim, who was age ten at the time of the trial, testified. The Petitioner's other son, who was age four at the time of the trial, did not testify because the trial court found that he was not competent to testify. The Petitioner and Ms. Fleeman appealed, and this court merged some of the Petitioner's convictions, dismissed some of Ms. Fleeman's convictions on the basis that the State failed to prove she was criminally responsible for the Petitioner's conduct, and remanded the case for a sentencing hearing on the issue of consecutive sentencing relative to the Petitioner. *See State v. Larry E. Rathbone and Veronda Gean Fleeman*, No. E2007-00692-CCA-R3-CD, 2008 WL 1744581 (Tenn. Crim. App. Apr. 16, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008). Following the new sentencing hearing, the Petitioner appealed the imposition of consecutive sentences, and this court affirmed the judgments of the trial court, which imposed a fifty-six-year effective sentence. *See State v. Larry E. Rathbone*, No. E2011-01269-CCA-R3-CD, 2012 WL 2394103 (Tenn. Crim. App. June 26, 2012), *perm. app. denied* (Tenn. Oct. 17, 2012).

The Petitioner filed a pro se post-conviction petition. Counsel was appointed and filed two amended petitions. As pertinent to this appeal, the petition and amended petitions alleged that the Petitioner had received the ineffective assistance of counsel because (1) his trial attorney had a conflict of interests arising from the dual representation in the conviction proceedings of the Petitioner and the Petitioner's girlfriend, (2) trial counsel failed to seek a severance, and (3) the trial court failed to challenge the competency of the ten-year-old victim to testify.

At the post-conviction hearing, the former district public defender testified that the public defender's office had been appointed to represent the Petitioner and Ms. Fleeman in the conviction proceedings. She said one of the assistant district public defenders served as lead counsel in the trial court and that she had been involved in preparing the brief and presenting the oral argument in the Petitioner and Ms. Fleeman's appeal.[1] Appellate counsel said that the case had been discussed in the office throughout her office's representation of both defendants but that she had not been actively involved before the appeal. Relative to a possible conflict of interests due to her office's representation of both defendants, appellate counsel said she "didn't feel conflicted from the beginning" because both defendants said the victim had not told the truth. She agreed that she had no knowledge of whether trial counsel met with the Petitioner to discuss a

---

[1] For simplicity, we will refer to the district public defender as appellate counsel and to the assistant district public defender as trial counsel.

conflict of interests and whether the Petitioner waived any conflict. She agreed she did not talk to trial counsel about whether the Petitioner had signed a written waiver. She said she had not been aware of the existence of a conflict when the case was pending in the trial court. After she was asked to review two court rules, she agreed that the waiver of a conflict of interests was required to be in writing.

Appellate counsel agreed that she had concerns that if she said something favorable to the Petitioner in the appellate brief, it might be unfavorable to Ms. Fleeman. She noted that the State had taken the position at sentencing that the Petitioner had been a leader in the commission of the offense and that Ms. Fleeman had been less culpable. Appellate counsel said "that's the type of thing I would argue and probably quote, but I couldn't because that was arguing against [the Petitioner]."

Appellate counsel testified that the victim's testimony was the most important part of the State's case and that this witness "was all they had." She agreed that the State had called two child witnesses but that only one had been permitted to testify. She recalled that the one who was not allowed to testify had been very young and that the court found that he was unable to understand the "consequences of not being truthful or the obligation to be truthful under oath." She agreed that as a defense attorney, if she had information regarding "health evaluations and things of that nature" that might be pertinent to a witness's competency to testify, she would "seek to explore" the issue of the witness's competency.

Appellate counsel testified that she filed an application for permission to appeal to the Tennessee Supreme Court on behalf of the Petitioner. She said she obtained significant relief for Ms. Fleeman from the Court of Criminal Appeals, and she did not recall if she filed an application for permission to appeal on behalf of Ms. Fleeman. She agreed that this court vacated all but one of Ms. Fleeman's convictions based upon insufficiency of the evidence. She agreed that the court held that Ms. Fleeman could not be criminally responsible for the Petitioner's conduct and that the conviction the court affirmed was based upon "direct contact between [the victim] and [Ms. Fleeman]."

Appellate counsel identified the brief she filed with this court on behalf of the Petitioner and Ms. Fleeman. She agreed that she raised a sufficiency of the evidence issue based upon the victim's providing the only evidence of the offenses and that she did not raise an issue regarding trial counsel's lack of a challenge to the victim's competency to testify. Appellate counsel did not recall why she did not raise an issue related to trial counsel's lack of a competency challenge. She agreed that she did not raise an issue related to the lack of a severance of the defendants. She said she thought that issues related to whether trial counsel had a conflict of interests and to the lack of a severance were more appropriate issues for a post-conviction petition than for the appeal of the convictions.

-3-

Appellate counsel testified that in hindsight, she should have raised a conflict of interests issue in the Court of Criminal Appeals relative to her joint representation of the defendants in the appeal. She said that if she had said, as appellate counsel, that she did not think she could represent both defendants ethically, the court would have had to appoint separate attorneys for the defendants. Appellate counsel said that if she had done this, the Court of Criminal Appeals would not have had to decide whether trial counsel had a conflict of interests. When asked whether she would have presented the same appellate issues if she had represented only the Petitioner, appellate counsel said she did not think she could answer because that was not the situation in which she had been. She noted that if the appellate court had granted a motion for appointment of separate counsel for each defendant, the public defender's office would not have represented either of the defendants because of the receipt of confidential information during the representation of both defendants. She said that her brief would have been different if she had represented only the Petitioner but that she did not know if it would have made a difference in the outcome. She could not identify anything that she could have done with regard to the appeal in order to obtain a more favorable result. She said that, in retrospect, she should not have represented both defendants on appeal.

Appellate counsel identified a June 24, 2005 letter from the Petitioner to trial counsel, in which the Petitioner stated that he did not think he could receive proper representation from an attorney who was employed by the State and that he wanted trial counsel to ask the court to appoint another attorney. Appellate counsel said the Petitioner's trial occurred "around September" 2005.

Appellate counsel agreed she raised an issue regarding the constitutionality of the consecutive sentencing statute in the application for permission to appeal to the Tennessee Supreme Court. She did not recall why she did not raise the other issues that she had raised in the Court of Criminal Appeals. The application for permission to appeal was received as an exhibit.

Michael Siwinski testified that, in his duties as a newspaper reporter, he spoke shortly after the Petitioner's trial with a woman who was the Petitioner's wife or ex-wife and was the victim's mother. Mr. Siwinski said that the woman stated she knew the Petitioner "didn't do it but he deserved it because he was an a------," had beaten her, and had abused her. Mr. Siwinski said the woman stated that the Petitioner "deserve[d] what he . . . got." Mr. Siwinski thought he had published the contents of the conversation in the newspaper. He said he had never spoken to the Petitioner but thought he had shared the information with trial counsel and a prosecutor.

The victim of the Petitioner's conviction offenses testified that he was currently age twenty-two and that he had received childhood mental health treatment before he

testified at the Petitioner's trial. The victim said he lived with his mother at the time of the Petitioner's trial and agreed she helped him with his "insulin problems." He said he had talked to a prosecutor about his prospective testimony before he testified at the trial. He said that he helped a neighbor with her dogs for money and that he did not receive governmental assistance. He said that he had been diagnosed with reading and learning disabilities and that he attended "one special class," the name of which he could not recall. He said he did not read well. When asked if he finished or left high school, he said, "yes."

During an offer of proof,[2] the victim testified that he told the Petitioner's attorney about one year ago that the victim's trial testimony had not been truthful and that the victim revealed the information to the victim's maternal grandfather about one year before he told the Petitioner's attorney. The victim said he "would have felt" he could tell the trial counsel the truth if counsel had talked to him. The victim said he would have told counsel that the sexual abuse did not happen. The victim thought his mother would not have prevented his talking with counsel. The victim said his mother told him to make the allegations and that he had done it because she threatened to hurt his brother and sister. He thought he could have disagreed with his mother. He said, however, that he had not felt at the time like he could tell anyone that his mother had influenced him to make the accusations.

The Petitioner testified that he had been concerned about trial counsel's having a conflict of interests and that he had tried to "fire" counsel and have the trial court appoint a different attorney. The Petitioner acknowledged that this occurred before he was aware counsel was representing Ms. Fleeman. The record showed that, at the time the Petitioner sought to have counsel replaced, Ms. Fleeman had been indicted but had not yet been served with a capias and had not yet surrendered to authorities. The Petitioner said that counsel had represented him at the preliminary hearing and that Ms. Fleeman "was not there at the time." He said she surrendered to authorities in September, a month before the trial. He said he learned that counsel was representing Ms. Fleeman, as well, when counsel informed him in late September that counsel had been appointed to represent her. The Petitioner said that counsel had stated the court had appointed counsel "for efficiency purposes or something." The Petitioner said counsel stated, "[I]t would look better also." The Petitioner said, "I didn't want [counsel] as my attorney to begin

---

[2] The State objected on the basis of relevance. The post-conviction court permitted the Petitioner to make an offer of proof regarding the victim's recantation and stated that it would consider the evidence only to the extent to which its relevance was ultimately shown. The court did not state whether it had considered the testimony received in the offer of proof. Its only ruling addressed an affidavit of the victim, which the court ruled was inadmissible. At the end of the hearing, the court expressed its disapproval of the Petitioner's having called this witness at the hearing and its doubt that the recantation testimony was relevant to the PC issues.

with, much less representing both of us." The Petitioner said he had been employed in construction and had not understood legal matters. He identified the June 2005 letter he wrote to counsel, in which he expressed his desire for a different attorney. He agreed that the court conducted a hearing as a result of the letter and that the court denied his request to discharge counsel.

The Petitioner testified that the mother of his children was upset because she learned he "was trying to take the kids from her," which would result in her losing his child support payments and the children's Social Security checks. The Petitioner said he informed trial counsel about this, but counsel did not question "any of them" about it at the trial. The Petitioner said he advised counsel that the victim's mother "had [the victim] locked up a couple [of] times" in a psychiatric hospital and that the Petitioner thought the victim's mother was using the victim's disabilities to manipulate the victim. The Petitioner said the victim's diagnoses included bipolar disorder. The Petitioner said he asked counsel to investigate this, but counsel did nothing. The Petitioner said a physician who did genetic testing of the victim opined that the victim did not have bipolar disorder and wrote in a report that the victim's mother "wants him to be [bipolar]." The Petitioner said the report had been in the discovery materials that counsel provided to him and that he showed the document to counsel. The Petitioner said he wanted counsel to present a defense theory that the victim's mother was controlling of the victim but that counsel did not present the theory to the jury and did not challenge the victim's mother's credibility.

The Petitioner testified that he asked trial counsel why the Petitioner and Ms. Fleeman were represented by the same attorney. The Petitioner said counsel stated the joint representation was because the Petitioner and Ms. Fleeman were charged with different offenses and because Ms. Fleeman was charged with criminal responsibility for the Petitioner's actions. The Petitioner said he did not know he was supposed to waive a conflict of interests and that he never signed a waiver. He said no hearing regarding the conflict of interests occurred in the trial court.

The Petitioner testified that trial counsel communicated a ten-year plea offer that would be in effect if the trial court determined that the victim was not competent to testify. He agreed that counsel had concerns about the victim's competency.

The Petitioner testified that he was not charged with any offenses related to the younger child. The Petitioner said the trial evidence included testimony that Ms. Fleeman "let [the younger child] touch her," that this was unrelated to Ms. Fleeman's charges, and that trial counsel did not object to the admission of the evidence. The Petitioner testified that he should have had a separate trial from Ms. Fleeman, in view of the Court of Criminal Appeals' vacating her convictions upon which the theory of guilt

had been criminal responsibility for his conduct and in view of his not having been charged with the remaining count for which her conviction was affirmed.

The Petitioner testified that the discovery materials reflected that the victim's account of the illegal acts changed "from . . . the arrest, the affidavit, to the forensic interview." He said, "I was charged with four counts of rape of a child and then it changed."

The Petitioner testified that the younger child was not allowed to testify at the trial on the objection of the trial court. The post-conviction court referred to the trial record and observed that trial counsel, not the trial court, had objected, and that the trial court had sustained the objection. The post-conviction court noted that being "reckless with words . . . goes into my ruling on credibility." The Petitioner later said the court "just brought it up" initially without a defense objection and that counsel objected "after they did the voir dire."

The Petitioner testified that the victim answered questions at the trial and that the jury credited the victim's testimony and convicted the Petitioner.

The Petitioner testified that he met with trial counsel three or four times in the kitchen of the old jail before the trial. The Petitioner said Ms. Fleeman attended one of the meetings. The Petitioner said counsel told them that "it would look better" if counsel represented both of them. The Petitioner agreed that both he and Ms. Fleeman denied the charges. He said he "didn't see [Ms. Fleeman] do anything." He agreed their positions at trial were the same "[o]n separate charges." He said, however, that they should have been "separated." He agreed that he learned about the joint representation sometime between September 25, 2005, when Ms. Fleeman surrendered to authorities, and October 26, 2005, the date the trial began.

Trial counsel testified that he was retired from the practice of law and had previously worked in the public defender's office. He said appellate counsel had been his supervisor.

Trial counsel said he had represented multiple defendants charged in a single case in his twenty-two years with the public defender's office. He said his duty in such a case was to ensure that no conflict of interests existed, to represent both clients vigorously, and not to "jeopardize one for the other."

Trial counsel testified that he did not think Ms. Fleeman had been under arrest or had participated in the preliminary hearing. He agreed that the Petitioner and Ms. Fleeman were indicted jointly after the case was bound over to the grand jury. He said, "I guess I was appointed to represent both of them." When asked about the absence in

the trial record of an order appointing him as counsel for Ms. Fleeman, he said, "I don't know how I would have represented her if I hadn't been appointed." He said he did not accept retained cases due to his employment with the public defender's office. Counsel said that he did not think a conflict of interests existed as to the Petitioner and Ms. Fleeman and that the State's theory of guilt as to each defendant was different as to the counts in which the Petitioner was charged with touching the victim and Ms. Fleeman was charged with criminal responsibility or facilitation of the Petitioner's conduct. Counsel noted that he met with both defendants and discussed the case in detail. He said that neither defendant said anything that would contradict the other. Counsel said, "And for what it's worth, they were in love at the time and they wanted to be tried together, they asked to be tried together, and I felt like that was not a problem." He acknowledged that the defendants did not make a written request to be tried together. Counsel said that, in retrospect, he would have wanted for the defendants to be tried together.

After reviewing Tennessee Rule of Criminal Procedure 44 and Tennessee Rule of Professional Conduct 1.7, trial counsel acknowledged that the required written waiver and hearing regarding conflict of interests did not occur in the Petitioner's case.

Trial counsel agreed that the trial judge had first raised the issue about the younger child's competency to testify. Counsel agreed that evidence of a mental health issue might affect a witness's competency and might help him discredit the witness. He agreed that no effort was made to challenge the competency of the testifying victim. Counsel agreed that he had examined the victim at the preliminary hearing and that he had reviewed the victim's statements to the police and the Department of Children's Services (DCS), and counsel said he had not had any concerns about the victim's competency to testify. Counsel did not recall the Petitioner's stating that "there might be some issue with [the victim's] mental state." Counsel agreed that when the State called the victim to testify at the trial, the victim "wouldn't testify" initially. Counsel agreed that the victim had been able to testify after the lunch break. Counsel agreed that he "wasn't pleased with" the opportunity for the victim to be encouraged to testify during the lunch break and did not recall if he had asked to speak with the victim and the victim's mother during the break. He agreed he had not asked to conduct a voir dire of the victim in order to ascertain what had occurred during the break, although he thought questions had been asked about it on the record. He agreed he did not have concerns about the victim's mental health at the time of the trial and said he did nothing to investigate the victim's mental health relative to the issue of competency to testify. When asked if he would have challenged the victim's competency to testify and credibility to the jury based upon findings from three evaluations which noted the victim's intellectual deficits, speech and language deficits, and behavioral issues, counsel said it was "[p]ossible." Counsel said he learned about the victim's psychiatric hospitalization from the victim's preliminary hearing testimony, but counsel noted that the victim was able to relate the facts of the case coherently and without difficulty. Counsel said that, before the post-conviction

hearing, he had not seen the documents related to the previous psychiatric evaluations. With regard to portions of the reports from the evaluations that counsel had been asked to read during his testimony, he said nothing in them indicated that the victim had any tendency to lie or deceive. He agreed that the reports were generated for the purpose of enrolling or maintaining the victim in special education classes.

Freddy McNeely, who was called as a rebuttal witness for the Petitioner, testified that he had been a juror at the Petitioner's trial. Mr. McNeely said that four or five years ago, he had talked by telephone to a male attorney whose name he did not know. He agreed he told the attorney that the outcome of the Petitioner's trial might have been different if the Petitioner had been represented by an attorney other than trial counsel. He said his impression, based on prior knowledge of trial counsel, had been favorable at the beginning of the trial but that the prosecutor seemed better prepared during the trial than trial counsel.

The Petitioner was recalled and testified that trial counsel's testimony had not been truthful when counsel said the Petitioner and Ms. Fleeman wanted to be tried together.

The post-conviction court took judicial notice of the following facts: Ms. Fleeman was indicted with the Petitioner, but she was not served with a capias until September 25, 2005. The Petitioner's July 8, 2005 motion for appointment of different counsel did not contain any reference to a severance or to "picking of . . . who the Public Defender is [going to] represent," and the Petitioner would not have known at the time that the Public Defender was also Ms. Fleeman's attorney. The court observed, "It's very clear to me that that there is no written order of appointment for the Public Defender to represent Ms. Fleeman."

The post-conviction court found that the record did not support a conclusion that appellate counsel's performance had been deficient. The court noted that appellate counsel's advocacy on behalf of Ms. Fleeman, which resulted in all but one of her convictions being vacated due to insufficiency of the evidence "doesn't suggest that [the Petitioner] was left behind."

With regard to the performance of trial counsel, the post-conviction court stated:

> Without [trial counsel's] testimony that the [Petitioner and Ms. Fleeman] wanted to be tried together, severing the defendants by all accounts should have happened. . . . The question is, is there proof to show that that severance in and of itself created a technical problem. And . . . there has been no showing of that.

The court found that trial counsel's testimony had been credible, noting specifically its findings that counsel's testimony regarding the Petitioner and Ms. Fleeman having professed to being in love and having "made a conscious decision to go to trial together." The court said the lack of a written waiver had been a "mistake" but that the testimony showed that counsel had not performed deficiently regarding the severance issue. The post-conviction court found that the Petitioner had not proven his ineffective assistance of counsel claims and that no structural error occurred during the conviction proceedings. The court said, however, that it would not enter an order for thirty days to allow the parties time to submit any additional evidence. In this regard, the court stated:

> [Trial counsel] testified very candidly about why he made his decisions at trial, why he made his pretrial decisions. The conversation that he talks about having with [the Petitioner] and Ms. Fleeman about them being in love, wanting to try the case together came across as very credible. He didn't – he told what he knew, he explained what he didn't know, and I find his credibility on the issues of severance and/or consolidation of these defendants as credible and controlling in this case. I'll – I'm [going to] put a caveat to that. I'm subject to change if we can find some . . . courtroom testimony that is contrary to what . . . I've heard here in Court. But based on what . . . I've heard here today suggests that . . . the [P]etitioner . . . and Ms. Fleeman made a conscious decision to go to trial together and although it is not memorialized in writing which would have always helped, . . . that's a mistake, but I find that the evidence, the testimony here overrides any, per se, mistake that one might say. So in that sense, the severance issue as [trial counsel] handled it was proper.
>
> . . . .
>
> If . . . something develops such as contrary information about how . . . the defendants were joined for trial, other information about a formal request to sever the defendants, then I may change my ruling, but . . . as I know it today under these circumstances, that's how it will stand.

After the hearing, the State filed additional documents consisting of relevant excerpts of the trial court's docket book related to the appointment of counsel for the Petitioner, Ms. Fleeman's arrest record reflecting the date she came into jail custody, and a letter the Petitioner sent to a juror after the trial. In the letter, the Petitioner stated that Ms. Fleeman "turned her self in on Sept. 25 2005 so we could go to trial." The Petitioner filed additional documents consisting of the affidavits of complaint for the Petitioner and Ms. Fleeman.

A pretrial hearing transcript filed with this court as a supplement to the appellate record reflects that Ms. Fleeman was arraigned on October 10, 2005. The transcript reflects that trial counsel advised the court, "I've spoken to [the Petitioner and Ms. Fleeman], and I do not believe at this time there is a conflict." The trial court responded that counsel should advise the court if a conflict arose.

The post-conviction court filed a written order, in which it found that the Petitioner had failed to prove his ineffective assistance of counsel claim relative to a severance of defendants. With regard to the conflict of interests issue, the court found that the Petitioner and Ms. Fleeman wanted to be tried jointly. The court discredited the Petitioner's testimony that the Petitioner asked trial counsel to obtain a severance and found that the Petitioner waived the severance issue by "standing mute." The court said, however,

> This cannot end the analysis. The problem magnifies at the appellate level when [appellate counsel] attempted to craft separate bases for relief. Her testimony reflects that she saw the difficulties in one lawyer representing two clients on a case such as this but feared raising the issue on appeal without evidence would jeopardize later PCR claims. She further stated that she thought any conflict required a waiver and without such an ethical conflict existed.

> As previously stated, this Court finds that although no written waiver was executed allowing the Public Defender to represent both defendants, it is clear that the Petitioner actively pursued a joint trial. It is situations such as this when our system of justice is called upon to protect a litigant from a potential and foreseeable danger. This court, and trial counsel, in an effort to accommodate defendants set for a relatively expeditious trial, failed to protect the Petitioner from his own misguided strategy. A tactic of this nature so clearly perilous should have drawn higher scrutiny by this Court and trial counsel regardless of waiver by the Petitioner.

> For this reason, the Court finds sufficient grounds to grant Petitioner's claim of constitutional error and the conviction is hereby vacated. This case will be re-docketed as soon as practical.

The State filed the present appeal, in which it contends that the post-conviction court erred in granting relief on the basis of ineffective assistance of counsel related to the conflicts of interest and severance issue. The Petitioner counters that the court properly granted relief on this basis but that the court erred in denying relief on his ineffective assistance of counsel claim related to the failure to challenge the victim's competency to testify.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2082). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (201). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**I**

-12-

With regard to the claim of ineffective assistance of counsel related to the dual representation of the Petitioner and Ms. Fleeman and to the lack of a severance, the State notes in its brief,

> A primary difficulty in this case is determining the precise bases upon which the post-conviction court granted relief. The State perceives two: (1) A Sixth Amendment violation stemming from a conflict of interest in trial counsel's dual representation of petitioner and Ms. Fleeman; and (2) a Sixth Amendment violation stemming from counsel's ineffectiveness in failing to seek a severance of the co-defendants for trial.

The issue is complex because the ineffective assistance of counsel claim involves the intertwined questions of a conflict of interests claim and of the failure to seek a severance. We will consider the questions jointly.

The State argues that the post-conviction court erred in granting relief because the evidence did not show that an actual conflict of interests existed, that a severance was not required, and that the Petitioner would not have obtained a different result even if a severance had been granted. The Petitioner counters that counsel was ineffective because an actual conflict of interests existed, from which prejudice must be presumed, and because he did not receive a fair trial in the absence of a severance.

We read the post-conviction court's order as concluding that an actual conflict of interests existed. Our supreme court has said:

> [A]n actual conflict of interest includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of "compromising interests and loyalties." *See* [*State v. Culbreath*, 30 S.W.3d 309, 312-13 (Tenn. 2000)]; *see also* Tenn. R. Sup. Ct. 8, EC 5-1. In the context of multiple employment, for example, an actual conflict arises where an attorney's continuance of such employment "would be likely to involve the lawyer in representing differing interests." Tenn. Sup. Ct. R. 8, DR 5-105(B). If a conflict exists, it may only be cured if "it is obvious that the lawyer can adequately represent the interest of each [client] and if each [client] consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each." Tenn. Sup.Ct. R. 8, DR 5-105(C). An appearance of impropriety, on the other hand, existed under the Tennessee Code of Professional Conduct "in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the . . . representation poses substantial risk of disservice to

-13-

either the public interest or the interest of one of the clients." [*Clinard v. Blackwood*, 46 S.W.3d 177, 187 (Tenn. 2001)].

*State v. White*, 114 S.W.3d 469, 476-77 (Tenn. 2003).

A potential conflict of interests due to an attorney's representation of multiple clients "does not authorize a presumption of ineffective assistance of counsel." *Netters v. State*, 957 S.W.2d 844, 847 (Tenn. Crim. App. 1997) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). In addition to establishing that an actual conflict existed, a petitioner who alleges that he received the ineffective assistance of counsel due to the existence of an actual conflict of interests must show that the "actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348.

Trial counsel's failure to obtain a written waiver and to ensure that the trial court conducted a hearing on the conflict of interests issue, standing alone, does not entitle the Petitioner to relief. *See Thomas Keith Battle v. State*, No. 01C01-9510-CR-00335, 1997 WL 13739, at *7 (Tenn. Crim. App. Jan. 16, 1997), *perm. app. denied* (Tenn. Sept. 8, 1997).

One of the independent, professional decisions trial counsel had to make was whether to move for a severance or proceed with a joint trial. At the time of the Petitioner's trial, Tennessee Rule of Criminal Procedure 8(c) provided:

> (c) Joinder of Defendants. – Two or more defendants may be joined in the same indictment, presentment, or information:
>
> (1) If each of the defendants is charged with accountability for each offense included; or
>
> (2) If each of the defendants is charged with conspiracy, and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy; or
>
> (3) Even if conspiracy is not charged and all of the defendants are not charged in each count, if the several offenses charged:
>
> (A) Were part of a common scheme or plan; or
>
> (B) Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.

-14-

Tenn. R. Crim. P. 8(c) (2005) (amended 2006).

At the time, Tennessee Rule of Criminal Procedure 14(c)(2) provided:

(2)     The court, on motion of the state or on motion of the defendant other than under subdivision (c)(1), shall grant a severance of defendants if:

   (A)  Before trial, it is deemed necessary to protect a defendant's right to a speedy trial or it is deemed appropriate to promote a fair determination of the guilt or innocence of one or more defendants; or

   (B) During trial, with consent of the defendant to be severed, it is deemed necessary to achieve a fair determination of the guilt or innocence of one or more defendants.

*Id.*, Rule 14(c)(2) (2005) (amended 2006).

With these principles in mind, we must determine whether, given the facts of the case, trial counsel could exercise his independent professional judgment on behalf of the Petitioner while also representing Ms. Fleeman. The State argues that no conflict of interests existed because counsel's strategy – a total denial that the offenses occurred – was the same for both defendants. The State argues that no evidence shows that counsel was faced with making any decision which benefitted one client, to the detriment of the other. The Petitioner counters that due to the multiple representation, counsel failed in several respects in his duties to the Petitioner.

The post-conviction court credited trial counsel's testimony that he met with the Petitioner and Ms. Fleeman at the jail and that they expressed their desire to be tried together. The record reflects, as well, that counsel saw a tactical advantage in a joint trial because both defendants denied any culpability, and each defendant's across-the-board denials bolstered the other. In the letter written by the Petitioner to a juror after the trial and filed with the court as a post-conviction hearing exhibit, the Petitioner stated that Ms. Fleeman "turned her self in on Sept. 25 2005 so we could go to trial." He also stated, "All this trial was is if you believe [the victim] or me and [Ms. Fleeman]." The record supports the court's determination that the Petitioner wanted to be tried jointly with Ms. Fleeman and that counsel made an informed, strategic decision to proceed with a joint trial.

Turning to the Petitioner's arguments, he contends that trial counsel's divided loyalties led counsel not to object to evidence of uncharged misconduct, consisting of the victim's testimony that the Petitioner performed a sex act on the victim, that Ms. Fleeman

and the younger child saw it, and that, at the same time, Ms. Fleeman was allowing the younger child to touch her sexually. The Petitioner was convicted of rape of a child relative to the victim for this incident. Ms. Fleeman was convicted of rape of a child via criminal responsibility for the Petitioner's abuse of the victim, although this court vacated her conviction based upon insufficiency of the evidence. *See Larry E. Rathbone and Veronda Gean Fleeman*, 2008 WL 1744581, at *6-9. Ms. Fleeman was not charged with or convicted of a crime related to the sexual contact with the younger child based upon these facts. *See id.* The Petitioner argues that counsel should have objected on the basis that Ms. Fleeman's uncharged misconduct toward the younger child was irrelevant to the question of the Petitioner's guilt of the charged offense and on the basis that the evidence was unfairly prejudicial. The Petitioner also argues that counsel faced a dilemma in which an objection to this evidence on behalf of the Petitioner "could have drawn additional attention, scrutiny, or both, by the jury as it relates to Ms. Fleeman's misconduct as alleged in [the count for which she was convicted and which was affirmed on appeal]."

Trial counsel acknowledged at the post-conviction hearing that he did not object to this evidence. He said he did not know why he had not sought to exclude or object to the evidence or move for a mistrial. When asked if he had made a strategic decision not to object or request a mistrial, counsel said, "I couldn't answer that today."

Second, the Petitioner argues that trial counsel failed to represent him effectively because counsel had a conflict of interests in representing both defendants based upon the State's closing argument at the trial relative to Count Twelve, in which Ms. Fleeman was charged but the Petitioner was not. He argues that, in effect, the State argued that the Petitioner was guilty of uncharged misconduct via criminal responsibility for Ms. Fleeman's crime. The Petitioner points to the following excerpt from the argument:

> Count Twelve is the count that alleges that Veronda Fleeman is actually the person that does the abuse. Her criminal responsibility as to Count Twelve is the fact not that she watched it this time but that she participated, that she did it. [The victim] told you that it happened in the living room on the mattress. This was the mattress that Veronda slept on every night, because that's where Veronda told us she slept every night. It happened in the living room on the mattress. He said Veronda put her private on his private and that her clothes were off, and when I asked what did her body do, he said it went up and down. He even went a little bit further with this one, maybe because I asked. When her body was going up and down where were her hands? He stood right here and said they were right here on him (indicating), as her body was going up and down with no clothes on. And when I asked him where were your hands, he said they

-16-

were right here on him (indicating). He told you that when Veronda did that to him that his daddy was present and that his daddy watched that.

The Petitioner did not elicit any testimony from trial counsel at the hearing regarding counsel's lack of an objection to this portion of the State's closing argument.

Third, the Petitioner argues that trial counsel provided ineffective assistance related to the conflict of interests when counsel allowed the introduction of insufficient evidence to sustain Ms. Fleeman's convictions via a criminal responsibility theory. He argues that because Ms. Fleeman was tried jointly, the evidence of her criminal activity, albeit insufficient to support convictions against her, bolstered the State's case against the Petitioner because she was charged with criminal responsibility for the Petitioner's conduct.

In the post-conviction court, the Petitioner had the burden of proving ineffective assistance of counsel by clear and convincing evidence. *See* T.C.A. § 40-30-110(f). The record reflects that, although counsel did not ensure that the Petitioner signed a written waiver regarding any conflict of interests or that the trial court conducted a hearing on the issue, counsel determined after consulting with the Petitioner and Ms. Fleeman that no conflict was apparent and advised the court accordingly. The post-conviction court credited counsel's testimony that the Petitioner and Ms. Fleeman wanted to be tried together, and the record supports this determination.

The record reflects that the Petitioner and Ms. Fleeman denied that either of them committed the offenses. The Petitioner testified at the trial that he did not commit the offenses with which he was charged and that he never saw Ms. Fleeman engaged in sexual activity with the victim. Ms. Fleeman testified at the trial that she did not commit the offenses with which she was charged and that she never saw the Petitioner sexually abuse the victim. In view of the chosen defense of a blanket denial of wrongdoing, the admission of evidence of an additional uncharged crime allegedly committed by Ms. Fleeman and the evidence and closing argument that the Petitioner was present and observed Ms. Fleeman's abuse of the victim as charged in Count Twelve cannot be said to have created a conflict of interests that required separate representation of the defendants. The Petitioner, Ms. Fleeman, and trial counsel discussed joint representation and the denial defense. Given the totality of the evidence and the defense strategy, any objection to the evidence of uncharged conduct by the Petitioner and Ms. Fleeman and to the evidence and closing argument did not place counsel in a position in which he was required to sacrifice the interests of the Petitioner in favor of Ms. Fleeman. The jury's decision in this case was straightforward: Should they believe the victim, who testified about the offenses the Petitioner and Ms. Fleeman perpetrated on him, or should they believe the Petitioner and Ms. Fleeman, who denied that any abuse occurred? It was counsel's view, after a review of the facts and consultation with his clients, that a joint

-17-

trial benefitted the defendants because the total denial of culpability of each defendant bolstered the other. Counsel's ability to advance the Petitioner's defense was not impaired in the respects identified by the Petitioner by virtue of the joint representation, and counsel's not seeking a severance did not deprive the Petitioner of a fair determination of guilt or innocence.

We conclude that the record does not support the post-conviction court's determination that trial counsel provided ineffective assistance due to a conflict of interests in his representing both the Petitioner and Ms. Fleeman. The facts and circumstances of the case reflect that no conflict existed. Similarly, the record fails to reflect that the Petitioner demonstrated any prejudice that befell him as a result of counsel's alleged conflict of interests. Counsel was able to present the chosen defense, and the jury weighed the evidence and credited the victim's testimony over that of the Petitioner and Ms. Fleeman. The evidence of Ms. Fleeman's criminal conduct and the closing argument regarding the Petitioner's observation of Ms. Fleeman's abusing the victim were insignificant in view of the entire case and the issues presented relative to the Petitioner's commission of multiple offenses against the victim.

With regard to the question of whether trial counsel should have sought a severance, the Petitioner and Ms. Fleeman were appropriately joined for trial because the charged offenses were part of a common scheme or plan of sexual abuse of the victim. *See* Tenn. R. Crim. P. 8(c)(3)(A). To the extent that the Petitioner argues that trial counsel provided ineffective assistance in failing to obtain a severance, the question is whether counsel's inaction resulted in the Petitioner's not receiving a fair determination of guilt or innocence. *See id.*, Rule 14(c)(2)(A), (B).

As we have stated, trial counsel determined, after consideration of the facts and consultation with the Petitioner and Ms. Fleeman, that a joint defense was in the Petitioner's best interests, and the Petitioner consented. Moving for a severance or a mistrial in order for the defendants to be severed at their future trials would have been contrary to this objective. The evidence of Ms. Fleeman's alleged uncharged misconduct and the Petitioner's presence during Ms. Fleeman's commission of the act that formed the basis for Count 12 did not impair counsel's ability to proceed with a joint defense. The evidence of Ms. Fleeman's uncharged criminal conduct toward the younger child and the evidence and closing argument regarding the Petitioner's observation of Ms. Fleeman's abusing the victim were not significant in view of the entire case and the issues presented, such that the Petitioner was unable to obtain a fair adjudication of his guilt or innocence.

We conclude that the post-conviction court erred in granting relief on the Petitioner's claim that he received the ineffective assistance of counsel based upon trial counsel's having a conflict of interests and his failure to obtain a severance.

## II

The Petitioner contends that the post-conviction court erred in denying relief on his claim that trial counsel was ineffective because counsel did not challenge the victim's competency to testify at the trial. The State responds that the court properly denied relief because the Petitioner failed to offer any evidence to rebut the presumption that the victim had been competent to testify at the trial and that a reasonable probability existed that the result of the trial would have been different if counsel had challenged the victim's competency.

All witnesses are presumed competent to testify unless the Rules of Evidence or statutes provide otherwise. Tenn. R. Evid. 601. In Tennessee, no disqualification by rule or statute exists for children. *See id.*, Advisory Comm'n Cmts. The witness must be able to swear or affirm to tell the truth and must have personal knowledge of the matters about which he testifies. *See* Tenn. R. Evid. 602, 603.

The record reflects that trial counsel observed the victim's testimony at the preliminary hearing and had no concerns that the victim might be incompetent to testify. The victim testified at the preliminary hearing that he had been a patient at a psychiatric hospital. Although the Petitioner offered evidence at the post-conviction hearing that the victim had undergone psychiatric evaluations, he did not show that the victim was, at the time of the trial, unable to understand and make the oath and to relate facts from the victim's personal knowledge, and that counsel knew or should have known of the victim's alleged incompetency. The trial record reflects that, although the victim was hesitant to testify initially, he was able to testify after a break. The record reflects that, before he related the facts relevant to the charges, the victim was able to answer that he was ten years old and lived with his "Mamaw and Papaw." He was not asked about his understanding of the truth and whether he would tell the truth.[3] Trial counsel cross-examined the victim about having been hospitalized at "Peninsula" and having trouble remembering things. Counsel also cross-examined the victim about his testimony on direct examination as compared with his preliminary hearing testimony, and the victim was able to answer counsel's questions. The Petitioner called the victim as a witness at the post-conviction hearing, and the victim testified about his childhood mental health treatment and enrollment in a special education class. His testimony did not establish, however, that he had been unable to understand the oath he took to tell the truth at the trial. He merely claimed that he had been untruthful at the trial. The record reflects that the post-conviction court discredited the victim's recantation.

---

[3] We note that the Petitioner does not allege that the victim was not sworn as a witness, which would include the oath to tell the truth.

-19-

We conclude that the post-conviction court did not err in denying relief on this basis. The Petitioner failed to show by clear and convincing evidence that a factual basis existed for trial counsel to mount a successful challenge to the victim's competency to testify. The Petitioner is not entitled to relief on this basis.

**III**

The Petitioner contends that this court should grant plain error relief on the basis that he received the ineffective assistance of counsel when trial counsel (1) did not object to his observance of Ms. Fleeman's committing the offense that formed the basis for her conviction in Count Twelve and (2) did not object to the introduction of insufficient evidence of Ms. Fleeman's criminal responsibility for the Petitioner's criminal conduct. The State counters that these issues are waived because they were not raised in the post-conviction court.

The Post-Conviction Procedures Act requires that a petitioner raise "all" issues in his petition. T.C.A. § 40-30-104(d) (2018). Consideration of an issue which is raised for the first time on appeal is waived. *See, e.g.*, *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. 2004) ("[A]n issue raised for the first time on appeal is waived."); *State v. Turner*, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995); *see* T.C.A. § 16-5-108(a) (2009) (stating that the jurisdiction of the Court of Criminal Appeals is appellate in nature); T.R.A.P. 36(a) (stating that the appellate courts may not grant relief in contravention of the trier of fact). Consideration of these issues for the first time in this appeal is waived. Further, the Petitioner has not cited any authority for the use of plain error relief in a post-conviction setting. We decline to consider the issues as a matter of plain error.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is reversed. The Petitioner is not entitled to post-conviction relief.

_____
ROBERT H. MONTGOMERY, JR., JUDGE